UNITED STATES OF AMERICA

IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRETT H. WIGGERS,

       Plaintiff,

-v-                                                                      Case No. 21-11876

TERRAPIN INVESTMENT FUND III, LLC,
d/b/a TERRAPIN CARE STATION, and
RENAISSANCE SOLUTIONS, INC.,
Jointly and Severally,

       Defendants.
_____/

JOEY S. NISKAR (P55480)
The Niskar Law Firm, PLLC
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262
E-mail:  joey@wrongfullydischarged.com

Street Address:
30445 Northwestern Hwy., Ste. 250
Farmington Hills, MI  48334
_____/

# Complaint and Demand for Jury Trial

NOW COMES the plaintiff, Brett Wiggers, by and through his counsel, The Niskar Law Firm, PLLC, and in support of his complaint against the defendants, jointly and severally, hereby states as follows:

## A. Statement of Jurisdiction

1. Plaintiff is a resident of the County of Newaygo, State of Michigan.

2. Defendant, Terrapin Investment Fund III, LLC, is a Michigan limited liability company, which regularly conducts business throughout the geographic region comprising the Eastern District of Michigan, including but not limited to the counties of Oakland, Wayne, Macomb, and Washtenaw.

3. Defendant, Renaissance Solutions, Inc., is a Colorado Corporation which maintains a place of business in the State of Michigan, and regularly conducts business in the area comprising the Eastern District of Michigan.

4. As defendants reside in, maintain a place of business in, and/or regularly conduct business in the State of Michigan (including the Eastern District of Michigan), this Honorable Court possesses personal jurisdiction over the defendants.

5. Plaintiff alleges violations of the Uniformed Services Employment and Reemployment Rights Act, 38 USC § 4301, *et seq* ("USERRA"). As such, this Honorable Court possesses original subject matter jurisdiction pursuant to 28 USC § 1331 and 38 USC § 4323(b)(3). The Court possesses

supplemental jurisdiction over plaintiff's state law claim(s) pursuant to 28 USC § 1367.

6. As both defendants are residents of the State of Michigan, and at least one defendant is deemed to reside in the Eastern District of Michigan, venue is proper in the United States District Court for the Eastern District of Michigan, Southern Division, pursuant to 28 USC § 1391.

## B. Factual Allegations

Plaintiff incorporates all prior averments, as if fully set forth herein.

7. Plaintiff was employed by defendants as a human resources generalist.

8. Defendants are engaged in the business of cultivation, processing and selling of medical and retail cannabis products in Michigan and other states, and operate under the business name of "Terrapin Care Station."

9. Plaintiff was at all times during his employment with defendants a member of the Michigan Army National Guard.

10. On or about January 15, 2021, plaintiff's National Guard unit was activated to protect the United States Capitol following the unrest of January 6, 2021. His activation period was subsequently extended to March 23, 2021.

11. Plaintiff provided defendants with advance notice of his need to serve for his period of service commencing on January 15, 2021.

12. Plaintiff's aforementioned period of active duty encompassed the time period during which the defendants routinely performed employee

-3-

performance evaluations, granted bonuses, and granted raises and cost of living increases in pay.

13. Plaintiff was not granted an bonus payment, raise and/or cost of living increase in pay because of the time he took off from work to perform his military service from January 15, 2021 to March 23, 2021.

14. On or about April 21, 2021, plaintiff notified his manager, Jillian Books, defendants' National Human Resources Director, of a period of required military training commencing on May 6, 2021 (for which plaintiff was to leave on May 5, 2021).

15. Plaintiff provided defendants with advance notice of his need for time off work to attend the military training commencing on May 6, 2021.

16. On or about April 28, 2021, plaintiff followed-up with, and reminded Ms. Books of his upcoming training commencing on May 6, 2021.

17. On or about April 28, 2021, plaintiff provided Ms. Books with a copy of his training schedule which included dates for multiple future military training periods.

18. On May 5, 2021, the day plaintiff was to report for mandatory military training commencing on May 6, 2021, Ms. Books terminated plaintiff's employment.

19. The termination occurred 42 days after plaintiff returned from active duty service, roughly 14 days after plaintiff notified defendants of his need to

attend mandatory military training commencing May 6, 2021, roughly 7 days after receiving plaintiff's schedule of future military training periods, and the same day on which plaintiff was to report for military training commencing May 6, 2021.

20. Plaintiff had not been disciplined at any time during his employment with defendants.

21. Plaintiff previously received a raise on September 14, 2020 for "exceptional performance" of his job.

22. At the time defendants notified plaintiff of his termination, the reason given was an alleged violation of defendants' Covid-19 policy which supposedly occurred on April 5, 2021 – a full month earlier.  In particular, defendants accused plaintiff of reporting to work while experiencing Covid-19 symptoms.  However, plaintiff did not experience any Covid-19 symptoms at any time on, or prior to April 5, 2021.

23. Defendants terminated plaintiff's employment, in whole or in substantial part due to his service in and obligations to the uniformed services, including but not limited to his period of absence to serve from January 15, 2021 to March 23, 2021, his need for additional time off work to undergo mandatory military training commencing on May 6, 2021, and/or his need for additional time off work in the future to undergo mandatory military training as set forth in the training schedule he shared with defendants.

24. Defendants failed and/or refused to grant plaintiff a bonus, raise and/or a cost of living increase in his compensation in whole, or in substantial part, due to plaintiff's service in and obligations to the uniformed services, including but not limited to his period of absence to serve from January 15, 2021 to March 23, 2021.

25. Defendants utilized plaintiff's period(s) of absence, and/or future periods of absence for service in the uniformed services as a motivating factor and/or a negative factor in the decision to terminate plaintiff's employment, and the decision to deny him a bonus, raise and/or cost of living increase in compensation.

26. Defendants terminated plaintiff's employment in violation of the anti-discrimination and/or anti-retaliation provisions of USERRA, and the regulations promulgated thereunder.

27. Defendants denied plaintiff a bonus, raise and/or cost of living increase in compensation in violation of the anti-discrimination and/or anti-retaliation provisions of USERRA, and the regulations promulgated thereunder.

28. Defendants knew that the aforementioned adverse actions against plaintiff violated USERRA, and/or acted with reckless disregard for whether the taking of such adverse actions violated USERRA.

## C. Count I – Violation of the Uniformed Services Employment and Reemployment Rights Act, 38 USC § 4301, *et seq.* ("USERRA")

Plaintiff incorporates all prior averments, as if fully set forth herein.

29. Plaintiff qualified as, and was an employee of defendants under USERRA, and the regulations promulgated thereunder.

30. Defendants qualified as and were, individually and/or collectively, an employer of plaintiff under USERRA, and the regulations promulgated thereunder.

31. Plaintiff's period(s) of absence, and future periods of absence for service in the uniformed services (including training) were protected by USERRA.

32. Plaintiff provided defendants with adequate, timely and sufficient notice under the circumstances of his obligation(s) to perform his military service (including training).

33. Defendants violated and engaged in conduct prohibited under USERRA, and the regulations promulgated thereunder, including but not limited to:

    a. Unlawfully denying plaintiff leave under USERRA;
    b. Unlawfully terminating plaintiff in violation of USERRA;
    c. Unlawfully failing to provide bona fide reinstatement and/or reemployment to plaintiff following his return from military service;
    d. Unlawfully using plaintiff's membership, service, application and/or obligations in the uniformed services as a motivating factor in the decision to terminate his employment, and thus discriminating against plaintiff in violation of 38 USC § 4311(c)(1);
    e. Unlawfully using plaintiff's membership, service, application and/or obligations in the uniformed services as a motivating factor in the decision to deny him a bonus, raise and/or a cost of living increase in compensation, and thus discriminating against plaintiff in violation of

    38 USC § 4311(c)(1);
f. Unlawfully using plaintiff's exercise of one or more rights under USERRA as a motivating factor in the decision to terminate his employment, and thus unlawfully retaliating against plaintiff in violation of 38 USC § 4311(c)(2);
g. Unlawfully using plaintiff's exercise of one or more rights under USERRA as a motivating factor in the decision to deny him a bonus, raise and/or a cost of living increase in compensation, and thus retaliating against plaintiff in violation of 38 USC § 4311(c)(2);
h. Unlawfully terminating plaintiff's employment without just and/or sufficient cause in violation of 38 USC § 4316(c);
i. Unlawfully failing to maintain plaintiff's employment benefits during the time period plaintiff was entitled to under USERRA;
j. Unlawfully failing to timely, adequately and appropriately comply with the regulations promulgated under USERRA;
k. Unlawfully discriminating against plaintiff in violation of 38 USC § 4311(c)(1), and the associated regulations promulgated under USERRA;
l. Unlawfully retaliating against plaintiff for exercising rights in violation of 38 USC § 4311(c)(2), and the associated regulations promulgated under USERRA; and/or
m. Willfully violating plaintiff's rights under USERRA, and the regulations promulgated thereunder.

34. As a direct and proximate result of defendants' violations of USERRA and the regulations promulgated thereunder, plaintiff has incurred all damages available at law, both past, present and into the future, specifically including all damages set forth in 38 USC § 4323(d) and (h), including but not limited to lost wages, lost overtime wages, lost salary, the value of lost employment benefits, loss of other compensation denied and lost, consequential damages, any incurred medical expenses, interest, costs of litigation, attorney fees and liquidated damages equal to the sum set forth in 38 USC § 4323(d). Plaintiff hereby seeks recovery of, and is entitled to recovery of,

all such damages incurred, and those that will be incurred in the future (including front-pay).

35. In the event the Court deems reinstatement to be a remedy more appropriate than front-pay for future economic damages, then plaintiff, in the alternative, hereby seeks an injunctive order compelling defendants to reinstate plaintiff to his former position, and to retroactively restore plaintiff's seniority and all other benefits.  Even if the Court orders such reinstatement, plaintiff nevertheless is entitled to recover, and hereby seeks recovery of all other damages listed in this complaint, including back-pay, the value of lost benefits, consequential damages, any medical expenses incurred, attorney fees, liquidated damages, costs, interest, etc.

### D.  Count II – Violations of Michigan Military Leaves and Reemployment Act, MCL § 32.271, *et seq*. ("MMLRA") and Michigan Public Policy

Plaintiff incorporates all prior averments, as if fully set forth herein.

36. Plaintiff was at all pertinent times a member of the military forces of the state and/or United States within the meaning and contemplation of the MMLRA.

37. Defendants qualified as and were, individually and/or collectively, an employer of plaintiff within the meaning and contemplation of the MMLRA.

38. Plaintiff's period(s) of absence, and future periods of absence for service in the National Guard (including training) were protected by the MMLRA and/or Michigan's public policy.

39. Plaintiff provided defendants with adequate, timely and sufficient notice under the circumstances of his obligation(s) to perform his military service (including training).

40. Defendants violated and engaged in conduct prohibited under the MMLRA and/or Michigan's public policy, including but not limited to:

    a. Unlawfully denying plaintiff leave under the MMLRA and/or Michigan's public policy;
    b. Unlawfully terminating plaintiff in violation of the MMLRA and/or Michigan's public policy;
    c. Unlawfully failing to provide bona fide reinstatement and/or reemployment to plaintiff following his return from military service in violation of the MMLRA and/or Michigan's public policy;
    d. Unlawfully using plaintiff's membership, service, application and/or obligations in the uniformed services as a reason for and/or motivating factor for the decision to terminate his employment, and thus discriminating against plaintiff in violation of the MMLRA and/or Michigan's public policy;
    e. Unlawfully using plaintiff's membership, service, application and/or obligations in the uniformed services as a reason for and/or motivating factor in the decision to deny him a bonus, raise and/or a cost of living increase in compensation, and thus discriminating against plaintiff in violation of the MMLRA and/or Michigan's public policy;
    f. Unlawfully using plaintiff's exercise of one or more rights under the MMLRA as a reason for and/or motivating factor in the decision to terminate his employment, and thus unlawfully retaliating against plaintiff in violation of the MMLRA and/or Michigan's public policy;
    g. Unlawfully using plaintiff's exercise of one or more rights under USERRA as a reason for and/or motivating factor in the decision to deny him a bonus, raise and/or a cost of living increase in

        compensation, and thus unlawfully retaliating against plaintiff in violation of the MMLRA and/or Michigan's public policy;

    h.    Unlawfully terminating plaintiff's employment without just and/or sufficient cause in violation of the MMLRA and/or Michigan's public policy;

    i.    Unlawfully failing to maintain plaintiff's employment benefits during the time period plaintiff was entitled to under the MMLRA and/or Michigan's public policy;

    j.    Unlawfully discriminating against plaintiff in violation of the MMLRA and/or Michigan's public policy;

    k.    Unlawfully retaliating against plaintiff for exercising rights under the MMLRA and/or Michigan's public policy, in violation each; and/or

    l.    Willfully, recklessly and/or intentionally violating plaintiff's rights under the MMLRA and/or Michigan's public policy.

41.    As a direct and proximate result of defendants' violations of the MMLRA and/or Michigan's public policy, plaintiff has incurred all damages available at law, both past, present and into the future, specifically including compensatory damages such as emotional distress, lost wages, lost overtime wages, lost salary, the value of lost employment benefits, loss of other compensation denied and lost, consequential damages, any incurred medical expenses, exemplary damages, interest, costs of litigation, and attorney fees. Plaintiff hereby seeks recovery of, and is entitled to recovery of, all such damages incurred, and those that will be incurred in the future (including front-pay).

42.    In the event the Court deems reinstatement to be a remedy more appropriate than front-pay for future economic damages, then plaintiff, in the alternative, hereby seeks an injunctive order compelling defendants to

reinstate plaintiff to his former position, and to retroactively restore plaintiff's seniority and all other benefits. Even if the Court orders such reinstatement, plaintiff nevertheless is entitled to recover, and hereby seeks recovery of all other damages listed in this complaint, including compensatory damages such as emotional distress, back-pay, the value of lost benefits, consequential damages, any medical expenses incurred, exemplary damages, attorney fees, costs, interest, etc.

WHEREFORE plaintiff respectfully prays for judgment against the defendants, jointly and severally, for all compensatory damages (non-economic and economic), liquidated damages, exemplary damages, and all other damages available at law, together with costs, interest and attorney fees incurred in having to investigate, pursue, litigate and prosecute the instant action.

Respectfully submitted,

THE NISKAR LAW FIRM, PLLC

By: /s/ Joey S. Niskar
JOEY S. NISKAR (P55480)
Attorney for Plaintiff
30445 Northwestern Hwy., Ste. 250
Farmington Hills, MI 48334
(248) 702-6262
Dated: August 12, 2021                E-mail: joey@wrongfullydischarged.com

UNITED STATES OF AMERICA

IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRETT H. WIGGERS,

        Plaintiff,

-v-                                                      Case No. 21-11876

TERRAPIN INVESTMENT FUND III, LLC,
d/b/a TERRAPIN CARE STATION, and
RENAISSANCE SOLUTIONS, INC.,
Jointly and Severally,

        Defendants.
_____/

JOEY S. NISKAR (P55480)
The Niskar Law Firm, PLLC
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262
E-mail:  joey@wrongfullydischarged.com

_____/

## Demand for Jury Trial

The plaintiff, Brett Wiggers, by and through his attorneys, The Niskar Law Firm, PLLC, hereby demands a trial by jury on all issues in the instant action.

-13-

                                         Respectfully submitted,

                                         THE NISKAR LAW FIRM, PLLC

                                         By: /s/ Joey S. Niskar
                                         JOEY S. NISKAR (P55480)
                                         Attorney for Plaintiff
                                         30445 Northwestern Hwy., Ste. 250
                                       Farmington Hills, MI  48334
                                       (248) 702-6262

Dated:  August 12, 2021            E-mail:  joey@wrongfullydischarged.com